CLICK HERE TO SAVE OVER 75% ON A STUDENT GIFT SUBSCRIPTION
THE WALL STREET JOURNAL.

Dow Jones Reprints: This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers, use the Order Reprints tool at the bottom of any article or visit www.djreprints.com.

See a sample reprint in PDF format.    Order a reprint of this article now

# THE WALL STREET JOURNAL.
WSJ.com

POLITICS    |    NOVEMBER 28, 2010

## Boom in Debt Buying Fuels Another Boom—in Lawsuits

By **JESSICA SILVER-GREENBERG**

Glynis Martin, a 56-year-old New York social worker, started struggling to keep up with her credit-card bills about five years ago as the mortgage on her Bronx apartment ate up most of her paycheck.



Debt collectors are turning to the courts to re-coup bad debts. WSJ's Jessica Silver-Greenberg talks with Kelsey Hubbard about how the new tactics affect consumers and the new burden for the courts.

Pretty soon debt-collection calls became routine for her, and in January, Midland Funding LLC sued Ms. Martin in Bronx County Civil Court for $4,524.84.

"I just couldn't make ends meet and pay off those cards," she says. "I would have paid them what I could. It seems like they just went straight to court."

The strategy worked: Midland won a default judgment against her for $5,957.46 after Ms. Martin didn't show up for the first court date. She is paying $60 a month.

On the same day the company sued Ms. Martin, it filed 109 other cases to recover delinquent debt in Bronx County Civil Court, part of the 4,279 cases filed there since the start of this year.

The average amount of money Midland sued to collect on one day was $2,069. None of the borrowers sued that day had lawyers, and only 10% showed up in court at all.

Across the nation, there is a surge in lawsuits against people who aren't paying their bills, driven by the debt-buying industry that has boomed in the past three years as a sea of souring loans and credit-card obligations have become cheaper and cheaper to buy amid hard economic times.

Handing debt over to collectors is an important step in cleaning up the financial system, but the explosion in lawsuits—many for small sums—creates problems for the legal system. "There exists a real danger that the courts will be perceived as mere extensions of collection agencies," says Thomas Donnelly, an associate judge in Cook County, Ill.

There are no nationwide figures available, but a survey of 20 judges across the nation by The Wall Street Journal yielded anecdotes of court calendars choked with debt-collection suits. For example, Judge Donnelly says he has heard as many as 400 cases a day, filed by debt buyers, debt collectors and their attorneys who have often lugged their filings to his courtroom in crates.



Profit in Debt
Annual revenue for the top two publicly traded debt buyers
Source: the companies

Midland, the company that sued Ms. Martin, is a unit of San Diego-based Encore Capital Group Inc., which buys distressed debt—loans on which borrowers have stopped making payments—for a few pennies on the dollar and often sues to collect. Encore says it filed 245,000 lawsuits last year, and nearly half its $487.8 million in gross collections came from legal actions. That is down from the 474,000 suits it filed in 2008, when the financial crisis created an explosion in bad debt. But Encore expects the number of lawsuits to climb this year because of the sluggish economy.

J. Brandon Black, chief executive of Encore, says suing is the only way his company can recover money in many collection cases. "We always prefer to speak with our consumers directly and work with them to create an arrangement that retires their account," he says. "Unfortunately, we rarely have the chance." Only 6% of Encore customers respond to a letter, and only 18% respond to a phone call, he adds.

In the 1990s and early 2000s, U.S. consumers went on a colossal spending binge, fueled by easy credit. Total debt outstanding on credit cards rose to $1.9 trillion in 2007 from $475 billion in 1993. When the economy began contracting three years ago, millions of Americans stopped making their loan payments. Lenders have written off $3.2 trillion in consumer debt of all type since September 2007, according to Mark Zandi, chief economist of Moody's Analytics. That tally includes home mortgages, auto loans and student loans in addition to credit-card debt.

More than 450 debt buyers scooped up an estimated $100 billion in distressed loans last year, according to the latest estimates by Kaulkin Ginsburg, a debt-collection industry adviser. Debt collectors used to harry nonpaying borrowers for months with letters and phone calls. But those tactics are less effective now that many more borrowers are deeply in debt. So the new breed of debt collectors turns much more quickly to court to squeeze money out of distressed paper.

Michelle Smith Scott, a small-claims court judge in Indianapolis who handles disputes of less than $6,000, imposed in October of last year a limit of 500 new debt-collection cases every two weeks on law firm Bowman, Heintz, Boscia & Vician, based in Merrillville, Ind. Roughly 60% of the law firm's business comes from debt buyers, including Encore, according to a partner at the law firm.

Just like the current flap over foreclosures, debt buyers have run into trouble with judges in several states for taking shortcuts with papers filed in collection cases. "Everyone is hysterical about the robo-signing" by a mortgage-company worker who testified that he signed foreclosure documents without reviewing details of each case, says Ira Rheingold, president of the National



**Read more**

Read the marshal's notice that Ms. Thomas received. After being contacted by The Wall Street Journal, Midland said it ceased collection efforts with Ms. Thomas once becoming aware of her circumstances.



Tony Demin for the Wall Street Journal.

Timothy McCollough of Laurel, Mont., beat a debt collector in court, and won damages of $310,000 plus legal fees.

Association of Consumer Advocates. "What's overlooked is that...the scale in collection cases far exceeds what we're focused on now."

In some instances, the debt buyers' aggressive pursuit of debt may skirt state or federal laws limiting collectors. A patchwork of federal and state laws governs debt collection and litigation. On the national level, the Fair Debt Collection Practices Act limits how collectors pursue delinquent borrowers. Once debt buyers sue to retrieve debt, they are subject to state laws that impose a statute of limitations, often between five and seven years after the borrower stops making loan payments.

In 2007, CACV, a unit of debt collector SquareTwo Financial Corp., sued Timothy McCollough in state court in Montana to recover $3,800 on a credit card from J.P. Morgan Chase & Co., and another $5,500 in interest, collection costs and $480 in lawyer's fees.

Mr. McCollough wrote to the court in March 2008, explaining that he had been living on Social Security income since suffering a head injury in 1990. He says that he hadn't made any payments or used the credit card for more than eight years, putting his account beyond the state's statute of limitations for debt collection. He asked the court to dismiss the suit, saying: "This is the third time they have brought me to court on this account. Do I have to sue them so I can live quietly in pain?"

In April 2009, a judge awarded damages of $310,000 plus $108,000 in legal fees and costs to Mr. McCollough.

"CACV relies on its local attorneys to determine" whether debts exceed the statute of limitations, says Manuel Newburger, an outside counsel for CACV. "In this case it was brought to our attention that the case had not been handled in accordance with CACV's policies, and my client did the right thing by settling promptly with Mr. McCollough."

The big explosion in lawsuits is coming not from lenders but from firms who buy debt. The four largest publicly traded debt buyers—Encore, Asta Funding Inc., Asset Acceptance Capital Corp. and Portfolio Recovery Associates Inc.—purchased $19.6 billion in distressed debt last year. They typically recover three times what they spend buying debt, according to the Association of Credit and Collection Professionals, a trade group.

If the economy bounces back next year, profits at Encore and other debt buyers are likely to rise as collections improve, analysts say. "There's still a lot of distressed paper for sale, their collections are good and should only get better, so I'm expecting 2011 and beyond to be a good time for them," says Mark Hughes, an analyst with SunTrust Robinson Humphrey.

Wall Street has taken notice. J.C. Flowers & Co. LLC, the private-equity firm, has a 24% stake in Encore. BlackRock Inc. owns 6.9% of Portfolio Recovery Associates, a Norfolk, Va., company. In October, the company reported its highest quarterly revenue ever.

In 2006, One Equity Partners, the private-equity arm of J.P. Morgan Chase, purchased Pennsylvania-based NCO Group, which posted $1.56 billion in revenue last year, making it the largest debt-collection company. But J.P. Morgan is winding down the debt-buying side and will focus on debt collection, says Brian Callahan, a spokesman with the company.

Normally, a surge in buyers would push up prices of distressed debt, making the collections business less profitable. But because of the financial crisis, the amount of distressed debt has surged, and the very opposite happened. Prices for fresh chargeoffs—loans that are sold after the lender gives up on collecting on them—shrank to 4% to 8% of face value in 2009 from 8% to 13% of face value in 2008. So far this year, pricing of distressed debt has begun to increase slightly, although it remains well below pre-crisis levels, according to Encore.

The savings-and-loan crisis gave birth to the modern debt-buying industry. Lawmakers established the Resolution Trust Corp. to shutter failed thrifts and auction other assets to buyers. By the mid-1990s, the RTC sold more than $450 billion in these assets. Over time, some buyers of such assets shifted to a new source of profit: charged-off credit-card debt and other consumer debt.

Encore, the largest publicly traded debt buyer by revenue, filed the most lawsuits last year. The San Diego company posted $33 million in profit last year, up 139% from 2008. While the Standard and Poor's 500-stock index rose 23.5% in 2009, Encore's stock soared 142%.

Between 2007 and 2008, the company scooped up $20 billion in charged-off loans for $695.9 million. In order to wring more cash from debt, Encore increasingly has turned to the courts.

Lawsuits are filed by a network of outside law firms. Last year, Encore paid $112.6 million for legal collection, which brought in $233 million.

Once Encore sues, it is virtually assured a win, says Mr. Black, the company's CEO. Roughly 94% of collection cases filed against borrowers result in default judgments in favor of the debt buyer, according to industry estimates. The majority of borrowers don't have a lawyer, some don't know they are even being sued, and others don't appear in court, say judges.

A growing number of cases brought by debt buyers are plagued by sloppy, incomplete or even false documentation of debts, according to the 20 judges around the country interviewed by the Journal.

Mistakes might arise from the way that debt flows from the lender to the debt buyers. Bulk purchases of consumer debts sometimes include just a spreadsheet listing each person's name and the amount owed. Sales agreements usually limit how much additional information the buyer may request about the original debt.

Employees in Encore's Midland subsidiary work with outside law firms to file debt-collection suits. Midland has a proprietary computer system called "You've Got Claims" that generates unsigned affidavits. In these documents, which are signed and submitted to the court, employees attest that borrowers owe the amount of debt that Midland is suing to collect.

In a deposition filed as part of a civil lawsuit against Midland, employee Ivan Jimenez testified that he signs 200 to 400 affidavits a day. The percentage of documents checked for accuracy against other records is "very few and far between," he says. "As far as what I deal with, they just come from the printer as far as where we get them."

U.S. District Judge David A. Katz ruled last year that the debt-collection company violated federal and Ohio laws by trying to collect $4,516.57 in credit-card debt using a phony affidavit. The company certified that the debt was genuine "based entirely" on the printout, rather than personal knowledge of the debtor, the judge concluded.

He refused a request to throw out the lawsuit, which won class-action status. Judge Katz wouldn't comment on specifics of the case, though he says it shows that lawyers for borrowers should "be more diligent in looking to the underlying documentation" for debts being pursued by collectors.

Mr. Black of Encore, Midland's parent company, says he wouldn't comment on pending litigation. However, he emphasizes that "Midland had not misstated the amount of the debt."

**Write to** Jessica Silver-Greenberg at jessica.silver-greenberg@wsj.com

Copyright 2010 Dow Jones & Company, Inc. All Rights Reserved
This copy is for your personal, non-commercial use only. Distribution and use of this material are governed by our Subscriber Agreement and by copyright law. For non-personal use or to order multiple copies, please contact Dow Jones Reprints at 1-800-843-0008 or visit www.djreprints.com